OPINION
Appellant Wanda Lucas appeals the decision of the Juvenile Division of the Jefferson County Common Pleas Court which granted permanent custody of her four children to appellee Jefferson County Children Services Board ("the agency"). She claims that the decision is against the weight of the evidence and that the trial court committed reversible error by admitting hearsay evidence at the hearing. Since we agree that appellant was prejudiced by the improper admission of hearsay, the trial court's judgment is reversed and this cause is remanded for a new trial.
 STATEMENT OF THE CASE
On June 2, 1997, the Jefferson County Sheriff responded to complaints that naked children were on a porch roof shouting obscenities. When the Sheriff investigated, he was met by a babysitter. The Sheriff noticed that several upstairs windows were missing. Apparently, some of the children crawled through a window to reach the porch roof. Inside the house, the Sheriff encountered a strong stench, spoiling food, human and dog feces and cockroaches.
The Sheriff called the agency who responded to the call by removing seven children from appellant's house. Appellant is the mother of six of these children and the grandmother with legal custody over the other child. Pam and Joey, who were ages fourteen and twelve respectively at the time of removal, are not subjects of this appeal. Appellant's grandchild, Crystal M., was four at the time and is also not a subject of this appeal.[1] The four children whose custody is the subject of this appeal are Kenneth, Glen, Crystal L. and Theresa. Their respective ages at the time of removal were nine, eight, five, and two and one-half.
After their removal, the children were evaluated at the hospital. The five youngest children had lice. Kenneth and Glen had some cuts and bruises. Some of the children were behind on immunizations. Theresa was described as filthy. She was treated for bronchitis, an ear infection and a hole in her ear drum.
Appellant voluntarily gave temporary custody of the children to the agency. We note that she was not represented by counsel at the time she signed the papers for temporary custody. Various extensions were agreed to and ordered. After their removal, allegations surfaced that all the children except Theresa were subjected to sexual activities prior to removal. There were allegations that three out-of-home perpetrators were involved, one being appellant's son, Steven. There were also allegations that Joey sexually abused his siblings and caused them to abuse each other.
In November 1998, the state filed a motion seeking permanent custody. On April 1 and 6, 1999, a magistrate held an adjudicatory hearing on dependency, abuse and neglect simultaneously with a dispositional hearing on permanent custody. (Tr. 3, 69). The magistrate released a decision stating that the children were neglected[2] and granting permanent custody of the four children to the agency. Appellant requested findings of fact and conclusions of law. The magistrate responded by releasing an amended judgment entry that contained more detail. Timely objections followed. The juvenile court adopted the magistrate's decision in November 1999. The within timely appeal followed.
Appellant sets forth two assignments of error. The first assignment complains that the magistrate's decision was against the weight of the evidence. This argument need not be addressed due to our decision on appellant's second assignment of error which provides:
 "THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE AT THE HEARING REGARDING SEXUAL ABUSE OF THE CHILDREN."
Where a child has been adjudicated abused, neglected or dependent, the court may commit the child to the permanent custody of an agency if the court determines that the permanent commitment is in the child's best interests and that the child cannot be placed with a parent within a reasonable time or should not be so placed. Juv.R. 34(D)(4). The child's status as abused, neglected or dependent is determined at an adjudicatory hearing, while the child's future is determined at a dispositional hearing. These hearings must generally be bifurcated except in the case where the court is determining whether to modify a temporary custody order into an order for permanent custody. Juv.R. 34(I).
Pursuant to Juv.R. 34(B)(2), a juvenile court may admit material and relevant hearsay at a dispositional hearing, except as provided in Juv.R. 34(I). According to Juv.R. 34(I), the Rules of Evidence shall apply in permanent custody hearings. Thus, hearsay is admissible at disposition hearings for certain juvenile court matters, but hearsay is not admissible in a permanent custody hearing unless allowed by a specific Rule of Evidence.
In the case at bar, an agency representative testified that the children were not returned to appellant because it was unlikely that she could protect them from sexual abuse by outsiders and by the children themselves. In support, the state presented the testimony of an agency caseworker. The following excerpt is relevant:
 "A. According to the information that we had with the interviews Joey Lucas who is 14 years old disclosed that he had been —
 [Appellant's attorney]: I'm going to object to what the children said. They're not here.
THE COURT: Overruled.
 A. He disclosed that he had been sexually abusing his brothers Kenny and Glen, his sister Crystal L. and his niece Crystal M. And also there was a couple adult perpetrators named. I believe one of them was Raymond Blessing and a James Bonecutter had been named too.
* * *
 Q. And did the other children corroborate Joey Lucas' statements?
 A. Yes they did. * * * they were all pretty much perping on each other. Joey said that he would tell Glen and Kenny to do things to each other.
 [Appellant's Attorney]: Your Honor, I object. I don't really know how I'm going to handle this. I don't really want to keep objecting.
 THE COURT: You can have a continuing objection to what you perceive to be hearsay testimony and I'll continue overruling you.
* * *
 A. Joey had told us that he would have Kenny and Glen do sexual acts to him. He would have them do sexual acts to each other and also to Crystal M. and Crystal L.
 Q. And this occurred at the residence of Wanda Lucas.
A. Yes.
 Q. And this is during the time that Wanda Lucas had custody of the children.
A. Yes." (Tr. 19-20).
Later, when testimony was produced that Steven Lucas, another of appellant's sons, was also an alleged perpetrator of sexual abuse on the children, the court sustained appellant's objection and stated:
 "Generally [the] argument and objections about hearsay is well taken because hearsay is not admissible in an adversarial juvenile proceeding in which a parent is charged with neglecting his or her children and may lose custody of the children. Having said there are exceptions to the hearsay rule. I don't know if I'm relying so much on the hearsay in deciding this case anyway. I've heard some direct testimony already so kind of be careful on hearsay on future witnesses." (Tr. 24).
Thereafter, a Deputy Sheriff testified who interviewed some but not all of the children. She stated, "they stated that their mother was aware of that [the sexual abuse], they had told her and that she —." When appellant objected, the court sustained the objection. (Tr. 82).
During appellant's testimony, the agency's attorney asked:
 "If Crystal L. would say that Raymond did it to her five times everyone was at Goulds or State Lake, he did the same thing to Cree [Crystal M.], I told mommy and mommy hit Raymond, that would be true? * * * And if Crystal M. says that she `saw Raymond's pee pee, told mom, mom talked to him, he doesn't touch me any more' would she also be lying?" (Tr. 138).
When appellant objected, the court stated:
 "Well, you know it's the hearsay testimony that he's alluded to is not being used to prove the truth of the matter alluded to. It's being more used to cross examination of this witness on the issue of whether or not she feels that her children are or aren't truthful all the time, or * * * aren't truthful some of the time. I'm not considering as evidence what the question is. I never consider the question as evidence. * * * You have your objection but I'm overruling it." (Tr. 139).
The magistrate admitted much hearsay on sexual abuse. Hearsay is generally inadmissible. Evid.R. 802. The agency concedes that the evidence was presented as hearsay and does not fall under any exception to the ban on hearsay. However, the agency argues that the magistrate did not consider this hearsay in deciding the case. Although the magistrate sustained some objections and stated that it might not consider the hearsay, the magistrate's decision specifically found that appellant failed to protect the children from sexual abuse. In fact, the magistrate's original decision stated that appellant "allowed" the children to be involved in inappropriate sexual activities with adults and with siblings.
As aforementioned, the agency was not planning on seeking permanent custody of the children based on the facts surrounding the children's original removal. They did not begin making plans for permanent custody until the allegations of sexual abuse by siblings and out-of-home perpetrators were raised. The repeated sexual abuse toward and among the children was the agency's strongest argument for permanent custody as they used the multitude of occurrences to circumstantially prove that she cannot protect them since she was previously unaware of the abuse. Moreover, the agency basically told the court while appellant was testifying that appellant was aware that Crystal L. and Crystal M. had been abused by Raymond Blessings.
We realize that the agency may have been trying to protect the children by failing to use their testimony. However, there are permissible methods for presenting hearsay evidence concerning an abused child who is under twelve years of age. See Evid.R. 807. See, also, R.C. 2151.35(F). The admission of hearsay about a child victim under Evid.R. 807 requires that a foundation be laid and findings be made. See State v. Storch (1993),66 Ohio St.3d 280, 289 (stressing how Evid.R. 807 and the prerequisites for its use satisfy the requirements of the confrontation clause). The agency does not attempt to argue that the foundational requirements for these methods were laid, and the record lacks the required findings of fact by the court.
Moreover, Joey Lucas was over fourteen years old at the time of the hearing. If he admitted to perpetrating sexual abuse on Kenneth, Glen, Crystal L. and Crystal M. while in appellant's house, then he should have been brought in to testify. Furthermore, Pam Lucas was sixteen at the time of the hearing. If the state wished to introduce evidence that she had been sexually abused by out-of-home perpetrator James Bonecutter seven years before, her testimony should have been presented. It should also be noted that well over a year had passed since the allegations of sexual abuse against Steven Lucas and Raymond Blessing were revealed and no charges had been filed against them.
Besides the argument that the magistrate did not consider the hearsay and thus it was not prejudicial, the agency's only other rebuttal to this assignment of error is that the magistrate conducted an in camera review of some of the children. The agency suggests that the magistrate may have heard allegations of sexual abuse directly from the children at the incamera review, resulting in a lack of prejudice from the hearsay presented at trial. Regardless of any confrontation problems that such a scenario would present, said agency's contention is not supported by the record. This court has the transcript of the in camera review. The magistrate did not ask about sexual abuse but only inquired as to where Kenneth and Glen would like to live. We must also point out that the magistrate denigrated the children's mother and attempted to talk them out of wanting to live with her. This argument by the agency is without merit.
Appellant objected to the hearsay multiple times. In her objections to the trial court, appellant complained that there was no evidence to support the magistrate's finding that the children were sexually abused due to lack of supervision by their mother. In a case as important as one granting permanent custody of four children to an agency, we cannot say that the improper admission and consideration of hearsay was not prejudicial. Parental rights are basic and essential, and parents should be given every procedural and substantive protection the law allows. SeeIn re Etter (June 12, 1999), Hamilton App. No. C-970510, unreported, 5. We conclude that the presentation of the various items of hearsay negatively affected appellant's substantial rights.[3]
For the foregoing reasons, the decision of the trial court is reversed and this cause is remanded for a new hearing. The new hearing shall comply with the Juvenile Rules and the statutory sections governing such hearings. In fairness to all parties in this proceeding, we recommend that the hearing be conducted before a different magistrate.
 ____________________ VUKOVICH, J.
Cox, P.J., concurs.
Waite, J., concurs.
[1] After the hearing at issue in this appeal, Crystal M. was returned to her mother, Sandra Lucas, who is another of appellant's offspring.
[2] A neglected child is one who lacks adequate parental care due the faults of the parent. R.C. 2151.03(A)(2). This lack of adequate parental care includes a situation where the child's home is filthy or unsanitary. R.C. 2151.05.
[3] We also feel compelled to point out that the magistrate's decision found that appellant has a chronic illness and is dependent on alcohol. However, we can find no evidence in the record to support this conclusion.